# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00013 |
| Plaintiff, | DECISION AND ORDER GRANTING PLAINTIFF UNITED STATES' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JOSE PABLO ANANICH, | |
| Defendant. | |

In this ancillary proceeding pursuant to Federal Rule of Criminal Procedure 32.2(c)(1), Third-Party Petitioner Candice M. B. Ananich ("Mrs. Ananich"), wife of Defendant Jose Pablo Ananich, filed a pro se claim to forfeited funds. Before the Court is the United States' Motion for Summary Judgment as to Mrs. Ananich's claim to the U.S. Currency forfeited by Defendant Ananich to the United States. (Am. Mot. Summary J., ECF No. 99.) The United States' Motion is supported by depositions, a declaration, and an affidavit. (ECF Nos. 99-1–99-7.) Mrs. Ananich did not file an opposition and relies on her Third-Party Petition ("Petition"). (ECF No. 85.)[1] For the following reasons, the Court hereby GRANTS the United States' Motion for Summary Judgment and DENIES Mrs. Ananich's Petition and her claim therein.

## I. PROCEDURAL BACKGROUND

On October 29, 2021, the Court granted the United States' Motion for Preliminary Order of Forfeiture as to multiple properties, including: "[a]pproximately $146,728.00 in U.S.

---

[1] The Petition originally filed at ECF No. 85 contained twenty-one pages. Two blank pages were deleted, resulting in the current nineteen-page Petition.

Currency [;]" a 2008 Toyota Tundra C-Max 4WD LTD; and firearms and ammunition all seized from Defendant Ananich on or about June 1, 2021, pursuant to 21 U.S.C. § 853. ("Prelim. Order of Forfeiture" 1-2, ECF No. 24.) Subsequently, the United States posted the Notice of Preliminary Order of Forfeiture on an official government internet website pursuant to 21 U.S.C. § 853(n)(1), Federal Rule of Criminal Procedure 32.2(b)(6)(C), and Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (Decl. of Internet Publication 2, ECF No. 84.) A copy of the Notice was also mailed to Defendant's wife, Mrs. Ananich, because she reasonably appears to be a potential claimant with standing to contest the forfeiture. (Am. Mot. Summary J. 2.)

Mrs. Ananich responded to the Notice by filing a Petition asserting that she is the purported owner of $55,724 of the $146,728 U.S. Currency found at her house, seized by law enforcement, and subsequently forfeited by her husband to the United States. (Pet. 4.)

The Court thereafter granted the United States' Motion for Partial Final Order of Forfeiture as to the Toyota Tundra vehicle based on the notice given to Defendant Ananich in the Indictment that the United States sought forfeiture of the vehicle, Defendant's guilty plea to the drug charges in Counts 1 and 2 of the Indictment that established Defendant had an interest in the vehicle subject to forfeiture, a Preliminary Order of Forfeiture issued by the Court, and no filing of a third party claim. (ECF No. 88.)

As for the $146,728 in U.S. Currency, Petitioner filed her claim asserting ownership rights only for the money found inside her bedroom of the house. (Pet. 8.) In response to the Petition filed, the United States obtained an order authorizing discovery into Mrs. Ananich's claim to the U.S. Currency. (ECF No. 89.) The United States then conducted depositions of Mrs. Ananich and her three adult children, Drake Torres ("Drake"), Tatiana Ananich ("Tatiana"), and Thomas Ananich ("Thomas"). The United States also issued subpoenas duces Tecum to Mrs.

Ananich's two banking institutions, Coast 360 Federal Credit Union and Navy Federal Credit Union, to obtain her bank records; as well as to her places of employment at Guam Power Authority and Cars Plus Guam to review Mrs. Ananich's employment income. (Am. Mot. Summary J. 4.) Finally, it issued interrogatories and requests for documents to Mrs. Ananich to obtain additional information. (*Id.*)

After discovery concluded, the United States filed its Motion for Summary Judgment on May 16, 2025 (ECF No. 97), which was amended to redact personal identifying information. (Am. Mot. Summary J. 1.) Mrs. Ananich did not file an opposition, as confirmed at a Status Conference held on June 12, 2025. (Mins., ECF No. 104.) She did not separately provide any new information to support her Petition or to contest the facts asserted by the United States and only relies on her original declaration in her Petition.

## II. FACTUAL BACKGROUND

### A. Seized and Claimed U.S. Currency

Defendant Ananich resigned his job as a police officer in 2015 and was unemployed after the Cheers bar closed in 2020. (Ananich Dep. 22-23, 96.) On July 6, 2021, he plead guilty to multiple drug charges. (Mins., ECF No. 13.) In his Amended Plea Agreement, Defendant Ananich agreed that on June 1, 2021, he possessed $146,728 in U.S. Currency that was "primarily the illegal proceeds from the sales of methamphetamine." (Am. Plea Agreement ¶ 6, ECF No. 16.) Pursuant to his Amended Plea Agreement, Defendant Ananich forfeited all interest in the approximately $146,728 in U.S. Currency seized from him. (*Id.* at ¶ 16.) He agreed he was the sole owner of the U.S. Currency and other property seized and forfeited. (*Id.*)

Mrs. Ananich claims that $55,724 of the $146,728 U.S. Currency seized on June 1, 2021, belongs to her. (Pet. 8.) She claims to be an innocent owner and did not know of the conduct

giving rise to the forfeiture until the day her husband was arrested. (*Id.* at 4, 9.) In particular, she claims ownership of:

1. $11,967 U.S. Currency found in a large glass jar in her walk-in closet ("Fund 1"). Mrs. Ananich asserts that "all of us contributed our change for about 2 years, throughout COVID[.]" She refers to Fund 1 as a family "piggy bank[;]"

2. $6,177 U.S. Currency from the overflow of the Fund 1 glass jar in her walk-in closet. This overflow of funds was found under Mrs. Ananich and Defendant Ananich's bed in a container ("Fund 2"). She originally did not petition for Fund 2 because at the time she did not know her daughter took Fund 2 and put it under her bed in a container;

3. $9,000 U.S. Currency found in a plastic container in her walk-in closet. Mrs. Ananich asserts she started saving these funds when she noticed her husband's changed behavior ("Fund 3"); and

4. $28,580 U.S. Currency found in a plastic container in her walk-in closet ("Fund 4"). Mrs. Ananich claims it is money from her refinancing their home in September 2020.

(*Id.* at 4, 8, 14.)

In total, $49,547 in U.S. Currency was found in her walk-in closet in different containers and $6,177 was found under her bed for a total of $55,724 in U.S. Currency. (*See id.*) Mrs. Ananich stated in her Petition, "[u]nfortunately, I cannot provide any proof of the money my children and I had contributed to the savings as this was just small denominations of cash we would put into the jar throughout a couple of years or so." (*Id.* at 9.) Further she stated, "[t]here is no way to determine how much [she and her three children] each contributed." (Ananich Interrogatories 2, ECF No. 99-2.) Despite this, Mrs. Ananich states that the claimed funds stemmed from a combination of U.S. Currency from her three children, her savings, and refinancing her home in 2020. (*Id.* at 8.)

### B. Possible Sources of the U.S. Currency

#### 1. Mrs. Ananich's Lawful Income

Mrs. Ananich estimated her salary over the period of 2018 to 2021 to be from a low of about $60,000 to a high of $80,000. (Ananich Dep. 13-15.) Mrs. Ananich's W2s and tax returns revealed from 2018-2021 that her reported income ranged from $43,485.56 to $56,044.72. (Matanguihan Aff. 7.) Therefore, her net income ranged from approximately $1,325 per paycheck to $1,730 per paycheck. (*Id.*) Her paychecks were deposited directly into her Coast 360 checking account. (Ananich Dep. 16; Matanguihan Aff. 7.) However, there were only two ATM cash withdrawals and three checks written to cash against Mrs. Ananich's Coast 360 checking account, which totaled $326 for the period from January 2018 to June 2021. (Matanguihan Aff. 7.)

Mrs. Ananich also asserts she placed tips she received from working as a barback for Cheers bar until it closed in July 2019. (Ananich Dep. 12.)

Mrs. Ananich testified that for the period at issue, 2018 to June 2021, she had $500 automatically deposited twice a month from her Coast 360 checking account into her Navy Federal Credit Union account. (*Id.* at 63, 128-29.) These funds were used to pay for credit cards or bills. (*Id.*) Mrs. Ananich also testified she received $450 monthly income for her share from her family's company for a leased property in Saipan. (*Id.* at 54-55, 99.) In some months, she put $450 into Fund 3. (*Id.*) She received these funds by check and would deposit them into her Navy Federal Credit Union bank account. (*Id.* at 56.) She explained that she would sometimes withdraw this money to put into Fund 3 or she would use it to pay for bills. (*See id.* at 57.) However, Mrs. Ananich's bank account activity at Navy Federal Credit Union did not show any withdrawal of funds between January 2018 to June 2021. (Matanguihan Aff. 7.)

#### 2. Mrs. Ananich's Three Children's Contributions

As for Mrs. Ananich's three adult children's contributions to the claimed U.S. Currency, Mrs. Ananich's eldest, Drake, testified that their savings from 2012 to 2017 was used for a family trip to Japan, and thereafter they started to contribute to the family funds again. (Drake Dep. 52-53, ECF No. 99-3.) Starting in 2018 to 2020, he would contribute once or twice when he visited. (*Id.* at 14-15.) He would visit three to four times a month and put whatever he had, "if it was a dollar or $5." (*Id.* at 15.) In 2020, Drake admitted that he did not have opportunity to contribute. (*Id.* at 52.) In 2021, he started contributing again "[l]ike 3 to $5, whatever [he] had on hand" once or twice a month when he would visit. (*Id.* at 51.) This would either be in cash or coins. (*Id.* at 52.) Drake also confirmed that the only family savings was in the jar in Mrs. Ananich's closet. (*Id.* at 57.)

Mrs. Ananich's younger son, Thomas, testified that he would contribute anywhere from $10-20 or if there was a particularly busy night at his employment, he would contribute about $50 when he worked at Cheers from 2018 to 2019. (Thomas Dep. 12, 17, 52-53, 61, ECF No. 99-5.) For the years 2020 to 2021, he did not contribute to the funds unless it was change from the money Mrs. Ananich gave to him to buy items at the store. (*Id.* at 67.)

Last, Mrs. Ananich's daughter, Tatiana, testified that she contributed to the family funds when she worked at Cha Time for two months in May through June of 2021, from "checks from UOG during COVID," and from her stipend from AmeriCorps from July 2021 to July 2022. (Tatiana Dep. 14, 16-18, ECF No. 99-4.) She always put in small bills such as fives, tens, or ones. (*Id.* at 22.) Tatiana stated that she would randomly put in money. (*Id.* at 43.)

### 3. Mrs. Ananich's Refinance of Home

As to Mrs. Ananich's refinancing loan from Coast 360, records indicate that she received a net of $35,821.11 at closing. (Pet. 10; Matanguihan Aff. 6.) Mrs. Ananich testified, of this money, $7,000 went to her contractor and approximately $15,000 went to pay for her Jeep

- 6 -

Case 1:21-cr-00013   Document 105   Filed 07/03/25   Page 6 of 13

vehicle. (Ananich Dep. 141-45, 148-49.) After reviewing bank statements, she testified that she did not remember that she transferred $20,000 of the $35,821.11 proceeds to Defendant Ananich's account, which was confirmed through Coast 360 records. (*Id.* at 83; Matanguihan Aff. 6.)

### 4. Defendant Ananich's Contributions

Last, Defendant Ananich, would give Mrs. Ananich cash that she would put into the claimed funds. (Ananich Dep. 18, 33, 57, 81-82, 154-55.) Mrs. Ananich explained her husband obtained the cash from the sale of things he bought, fixed, and then sold. (*Id.* at 26-27, 117.)

## III. LEGAL STANDARD

Specifically for this ancillary proceeding, "[a] third party's petition asserting an interest in the property must 'set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.'" *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005) (quoting 21 U.S.C. § 853(n)(3)). "The petitioner may prevail only upon showing, by a preponderance of the evidence, that he possessed a vested or superior legal right, title, or interest in the property at the time the criminal acts took place, or that he was a bona fide purchaser for value." *Id.* (citing 21 U.S.C. § 853(n)(3)). "The petitioner bears the burden of proving his right, title, or interest under § 853(n)(6)." *Id.* If the court awards summary judgment, then a full ancillary proceeding is not needed. *See United States v. Mi Suk Yi*, Case No. CR03-406(B)-CAS, 2006 WL 8441496, at *9 (C.D. Cal. May 9, 2006) (concluding that because there were questions of material fact based on admissible evidence, a full ancillary proceeding was necessary).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattret*, 477 U.S. 317, 323-24 (1986). Summary

judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial must produce evidence that would entitle him to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

IV. ANALYSIS

The Court finds that the moving party, the United States, has met its initial burden, and the non-moving party, Mrs. Ananich fails to identify with reasonable particularity the evidence that precludes summary judgment. In her Petition, Mrs. Ananich asserts that the currency in the amount of $55,724 belongs to her, which she obtained through (1) refinancing her home, (2) personal savings from money she earned while working at Guam Power Authority, and (3)

contributions from her children. (Pet. 8.) Mrs. Ananich states in her Petition, "I cannot provide any proof of the money my children and I had contributed to the savings as this was just small denomination of cash . . . ." (*Id.* at 9.)

### A. Defendant Ananich's Forfeiture

In Defendant Ananich's Amended Plea Agreement, he agreed that on June 1, 2021, he possessed $146,728 in U.S. Currency that was "primarily the illegal proceeds from the sales of methamphetamine." (Am. Plea Agreement ¶ 6.) In the same agreement, Defendant Ananich forfeited all interest in the approximately $146,728 in U.S. Currency seized from him. (*Id.* at ¶ 16.) He agreed he was the sole owner of the U.S. Currency and other property seized and forfeited. (*Id.*) This is sufficient for the United States to meet its initial burden to show that forfeiture to the United States is proper.

### B. Fund 4: Sourced from Refinancing

To overcome the United States' claim to the forfeiture of funds, Mrs. Ananich identifies various sources of money to justify her claim to the four funds. As to her first argument regarding Fund 4 in the amount of $28,580, she claims it is from refinancing her home. (Pet. 8.) Her Coast 360 bank records reveal that she did receive $35,821.11 at closing on September 23, 2020.[2] (Matanguihan Aff. 6.) However, Mrs. Ananich testified that of the money from refinancing, $7,000 went to pay her contractor and approximately $15,000 went to pay for her Jeep vehicle. (Ananich Dep. 148-49.) The same bank records show that she transferred $20,000 to Defendant Ananich's account. (Matanguihan Aff. 6.) Mrs. Ananich could not explain what was the purpose of this transfer of money to her husband, especially when she also claims she was saving cash

---

[2] In referring to the Petition at ECF No. 85, page 19, Matanguihan's Affidavit incorrectly states the year 2023. (Matanguihan Aff. 6.)

- 9 -

for herself found in Fund 3 because she was trying to separate herself from her husband. (Ananich Dep. 81-82.)

At the time she filed the Petition, she believed she took out the whole $35,000 in proceeds. (*Id*. at 82-83.) However, it was not until she reviewed the bank statements that show she transferred $20,000 to her husband that she realized the refinancing could not be the direct source of all of Fund 4. (*Id*. at 83.) Yet, Mrs. Ananich persists that she put the money in Fund 4, albeit with a concession that she would have gotten the money from her husband, Defendant Ananich. (*Id.* at 85.) Furthermore, the $28,580 in cash seized was almost exclusively $20 bills. (*Id*. at 85.) Based on these facts, this court concludes Mrs. Ananich has failed to establish by a preponderance of the evidence that her refinancing loan proceeds was the source of Fund 4.

Even assuming the starting amount of $35,821.11 from refinancing her home was deposited into Fund 4 to explain the $28,580 found, the sum of her expenditures—$7,000 for her contractor and $15,000 for her Jeep—plus the $20,000 transferred to Defendant Ananich, exceeds the total bank proceeds she received and therefore could not be the source of the remaining $28,580 in cash found in her walk-in closet on the day of her husband's arrest. As she testified regarding Fund 4, although she personally put the cash there, she would have gotten the money from her husband. (*Id*. at 85-86.) Although Mrs. Ananich believed at the time that the money was from the mortgage, she now knows it could have been from something else. (*Id*. at 86.)

### C. Funds 1, 2, and 3: Sourced from Mrs. Ananich and Her Children's Incomes

#### 1. *Mrs. Ananich's Lawful Income*

This leaves Funds 1 through 3. Mrs. Ananich claims Funds 1 and 2 were the family "piggy bank" and sourced from lawful income including her income and her children's contributions. As to Fund 3, her emergency money, Mrs. Ananich asserts that she was the sole

contributor. (Ananich Interrogatories 2.) Funds 1, 2, and 3 total $27,144. However, her salary does not support her ownership claim. First, her paychecks ranged from approximately $1,325 to $1,730 per pay period and were directly deposited into her Coast 360 checking account. (Matanguihan Aff. 7.) Mrs. Ananich's actual income was less than her estimate in her testimony and was mostly used to pay bills. (*Id.* at 9.) During Mrs. Ananich's deposition, she revealed that twice a month Coast 360 would automatically transfer $500 to her Navy Federal checking account. (Ananich Dep. 128.)

Moreover, from January 2018 to June 2021, there were only two ATM cash withdrawals and three checks written to cash against Mrs. Ananich's Coast 360 account, which totaled $326. (*Id.*) Although Mrs. Ananich asserts she placed tips she received from working as a barback for Cheers bar until it closed in July 2019, Mrs. Ananich does not provide anything to substantiate this claim other than her word. (Ananich Dep. 129.)

Mrs. Ananich's other source of income, her family rental property, does not support a claim to Fund 3 as well. She received these funds by check and would deposit them into her Navy Federal Credit Union bank account. (*Id.* at 56.) She explained that she would sometimes withdraw this money to put into Fund 3 or she would use it to pay for bills. (*See id.* at 57.) However, Mrs. Ananich's bank account at Navy Federal Credit Union did not show any cash withdrawal of funds between January 2018 to June 2021. (Matanguihan Aff. 7.) Mrs. Ananich's explanation of where the U.S. Currency was sourced from is not consistent with the bank records nor her own testimony about using her income to pay bills.

### 2. *Drake, Thomas, and Tatiana's Lawful Income*

The testimony of the depositions of Mrs. Ananich's children also revealed that they contributed minimally to the claimed U.S. currency of Funds 1 and 2. Mrs. Ananich's eldest child, Drake, testified that their savings from 2012 to 2017 was used for a family trip to Japan,

and thereafter they started to contribute to the family funds again. (Drake Dep. 52-53.) Then starting in 2018 to 2020, he would contribute once or twice when he visited. (*Id.* at 14-15.) He would visit three to four times a month and put whatever he had, "if it was a dollar or $5." (*Id.* at 15.) In 2020, Drake admitted that he did not have the opportunity to contribute. (*Id.* at 52.) In 2021, Drake stated he started contributing again "[l]ike 3 to $5, whatever [he] had on hand" once or twice a month when he would visit. (*Id.* at 51.) This would either be in cash or coins. (*Id.* at 52.) Drake also confirmed that the only family savings was in the jar in Mrs. Ananich's closet. (*Id.* at 57.)

Mrs. Ananich's daughter, Tatiana, testified that she contributed to the family funds when she worked at Cha Time for two months in May through June of 2021, from "checks from UOG during COVID," and from her stipend from AmeriCorps from July 2021 to July 2022. (Tatiana Dep. 14, 16-18.) Tatiana stated she always put in small bills such as fives, tens, or ones. (*Id.* at 22.) Tatiana stated that she would randomly put in money. (*Id.* at 43.)

Mrs. Ananich's son, Thomas, also testified that he would contribute anywhere from $10 to $20 or if there was a particularly busy nights at his employment, he would contribute about $50 when he worked at Cheers in 2018 to 2019. (Thomas Dep. 12, 17, 52-53, 61.) For the years 2020 to 2021, he did not contribute to the funds unless it was the change from the money Mrs. Ananich gave to him to buy items at the store. (*Id.* at 67.) Based on Mrs. Ananich's children's deposition testimony, they did not contribute significantly to the total funds, nor can they specify the amount that they contributed in total.

### 3. *Defendant Ananich's Unlawful Contributions*

Finally, Mrs. Ananich admits on numerous occasions throughout her testimony that her husband, Defendant Ananich, would give her cash that she would put into the claimed funds. (Ananich Dep. 18, 33, 57, 81-82, 154-55.) She explained her husband obtained the cash from the

sale of something he bought. (*Id.* at 26, 117, 121.) Because Mrs. Ananich's income from different sources was deposited into her bank account, which she did not make any substantive withdrawals from, and her children's contributions were minimal, the only plausible remaining explanation is that Defendant Ananich contributed a vast majority of the U.S. Currency found in all Funds claimed.

## V. CONCLUSION

The Court has reviewed the Petition, the relevant portions of the sworn testimonies of Mrs. Ananich and her three children, and the Affidavit of Special Agent Erfel Matanguihan. Based on all the evidence presented, the Court finds that Mrs. Ananich failed to set forth specific facts showing that there is a genuine issue that she possessed a vested or superior legal right, title, or interest in the claimed U.S. Currency at the time Defendant Ananich's criminal acts took place. Mrs. Ananich's financial records do not support her assertions that the seized funds are from her legitimate sources of income, nor do the small contributions from her children and other sources of funds amount to a traceable portion of the claimed U.S. Currency.

For the foregoing reasons, the Court DENIES Mrs. Ananich's claims in her Petition and GRANTS the United States' Motion for Summary Judgment for the entry of a final order of forfeiture for the total claimed U.S. Currency amount of $146,728.00.

IT IS SO ORDERED this 3rd day of July 2025.

RAMONA V. MANGLONA
District Judge